**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

ANTHONY ALEXANDER CAMPBELL,
*Petitioner-Appellant,*

v.

BERT RICE,

*Respondent-Appellee.*

No. 99-17311

D.C. No.
CV-98-03265-SBA

OPINION

Appeal from the United States District Court
for the Northern District of California
Saundra B. Armstrong, District Judge, Presiding

Argued and Submitted En Banc
December 15, 2004—Pasadena, California

Filed May 20, 2005

Before: Mary M. Schroeder, Chief Judge,
Warren J. Ferguson, Stephen Reinhardt, Pamela Ann Rymer,
Andrew J. Kleinfeld, Barry G. Silverman, Susan P. Graber,
Kim McLane Wardlaw, Ronald M. Gould, Richard R. Clifton
and Jay S. Bybee, Circuit Judges.

Opinion by Judge Clifton;
Dissent by Judge Ferguson

**COUNSEL**

Howard M. Ullman (argued), Walter F. Brown, Jr., San Francisco, California, for the petitioner-appellant.

Peggy S. Ruffra (argued), John R. Vance, Jr., Office of the Attorney General, State of California, for the respondent-appellee.

# **OPINION**

CLIFTON, Circuit Judge:

Petitioner Anthony Alexander Campbell appeals the denial by the district court of his petition for habeas corpus under 28 U.S.C. § 2254. Petitioner challenges his California state court burglary conviction on two grounds. He argues that his trial counsel provided ineffective assistance because of a conflict of interest: she was being prosecuted at the same time by the same district attorney's office. In addition, he maintains that the trial court violated his due process rights by excluding him from an in-chambers meeting attended by the trial judge, the prosecutor, and his defense attorney, during which the court was informed of the prosecution of the defense attorney and concluded that the attorney did not have a conflict of interest. When presented with these arguments, the California state courts denied relief to Petitioner. Applying the deferential standard of review established under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), we affirm the district court's denial of the habeas petition.

## I. BACKGROUND

On May 26, 1995, the police arrested Petitioner while he was attempting to burglarize a home. After he consented to a search of his vehicle, the police recovered jewelry and other personal property. A later search of Petitioner's home resulted in the discovery of 239 items that had been reported stolen by individuals whose homes had been burglarized. Based on this evidence, the Santa Clara County District Attorney's Office charged Petitioner with multiple counts of first-degree burglary and several counts of attempted burglary.

Petitioner retained attorney Maureen McCann to represent him, and McCann appeared on his behalf at the December 4, 1995, preliminary hearing. A month later, on January 9, 1996, McCann was herself arrested for attempting to transport

methamphetamine into the San Martin Criminal Court Justice Facility. The Santa Clara County District Attorney's Office charged her with one count of felony drug possession. On February 6, 1996, McCann was arraigned.

Petitioner's trial commenced two days later. On the first day of trial, the court held a private in-chambers conference with McCann and the deputy district attorney who was prosecuting Petitioner. Petitioner was not notified of this meeting and did not attend. During this conference, the deputy district attorney informed the court that his office was prosecuting McCann on unspecified charges. The deputy district attorney represented to the court that his office would not give McCann favorable treatment under any circumstances. McCann declined to comment. The trial court then concluded that McCann's simultaneous prosecution by the district attorney's office did not present a conflict of interest concerning her continued representation of Petitioner.[1]

---

[1]The dissent speculates that the deputy district attorney "deliberately withheld from the trial judge material facts pertaining to McCann's criminal history, and . . . colluded with McCann to deny [Petitioner] the opportunity to consider retaining other counsel of his choice." *Post* at 5457. Contrary to the dissent's assertions, the record provides no evidence that the deputy district attorney *deliberately* withheld information or *colluded* with Petitioner's attorney. Indeed, it is not clear from the record that any information was in fact withheld from the trial judge. The transcript from the in-chambers hearing, quoted in the dissenting opinion, *post* at 5456-57, on its face does not include all that was actually said. Rather, it is evident that there was an off-the-record discussion among the attorneys and the trial judge before the result of the discussion was put on the record, a common practice. The transcript begins with a comment by the judge that the prosecutor had something to put on the record, and the statements that followed provide what appears to be a brief summary in conclusory terms of something that was already discussed.

It is simply impossible to tell from the transcript precisely what disclosure was made to the trial judge, what inquiries the judge might have made, if any, or what responses were provided to any inquiries. There is nothing in the transcript which demonstrates collusion between the two attorneys. We cannot assume more than the transcript tells us, of course, and our decision is not premised on any finding that there was, in fact, more detailed disclosure to the trial judge. Regardless, the statements in the dissenting opinion are not supported by the record, and Petitioner himself has not made such accusations.

The trial proceeded, and the jury found Petitioner guilty of eighteen counts of first-degree burglary and one count of attempted first-degree burglary. The trial court sentenced him to serve an aggregate term of fourteen years in prison. Petitioner filed a direct appeal and a state habeas petition with the California Court of Appeal. That court affirmed his conviction and denied his habeas petition on December 15, 1997. Petitioner then sought review from the California Supreme Court, which denied review of both matters on April 1, 1998.

Petitioner filed a habeas petition under 28 U.S.C. § 2254 in federal district court on August 25, 1998. The district court denied this petition, and Petitioner filed a timely notice of appeal. The certificate of appealability (COA) granted by a two-judge panel of this court only encompasses the question of whether Petitioner received effective assistance of counsel. We expand the COA to consider the question of whether Petitioner's right to due process was violated.

## II. DISCUSSION

We review de novo the district court's decision to deny Petitioner's habeas petition. *Bean v. Calderon*, 163 F.3d 1073, 1077 (9th Cir. 1998). Because the petition was filed after April 24, 1996, the effective date of AEDPA, the provisions of that statute apply. *Rios v. Rocha*, 299 F.3d 796, 799 n.4 (9th Cir. 2002).

Under AEDPA, a habeas petition cannot be granted unless the state court decision was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). AEDPA's "clearly established law" requirement limits the area of law on which a habeas court may rely to those constitutional principles enunciated in Supreme Court decisions. *See Williams v. Taylor*, 529 U.S.

362, 381-82 (2000). Only Supreme Court precedents are binding on state courts under AEDPA, but our precedents may be pertinent to the extent that they illuminate the meaning and application of Supreme Court precedents. *Casey v. Moore*, 386 F.3d 896, 907 (9th Cir. 2004). When applying these standards, we review the "last reasoned decision" by a state court. *See Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002).

A.   Ineffective Assistance of Counsel

**[1]** We first consider whether the state court's determination that the alleged conflict of interest did not cause Petitioner's attorney to render ineffective assistance was contrary to, or an unreasonable application of, clearly established federal law. *See* 28 U.S.C. § 2254(d). The Sixth Amendment right to counsel includes the "correlative right to representation that is free from conflicts of interest." *Wood v. Georgia*, 450 U.S. 261, 271 (1981). Upon notification that an actual or potential conflict of interest exists, a trial court has the obligation "either to appoint separate counsel or to take adequate steps to ascertain whether the risk was too remote to warrant separate counsel." *Holloway v. Arkansas*, 435 U.S. 475, 484 (1978); *see also Wood*, 450 U.S. at 272 & n.18. If the trial court fails to undertake either of these duties, the defendant's Sixth Amendment rights are violated. *See Holloway*, 435 U.S. at 484. Even if a defendant's Sixth Amendment rights have been violated in this manner, though, the defendant cannot obtain relief unless he can demonstrate that his attorney's performance was "adversely affected" by the conflict of interest. *Mickens v. Taylor*, 535 U.S. 162, 174 (2002).[2]

**[2]** In its treatment of Petitioner's case, the California Court

---

[2]In *Mickens*, the Supreme Court made clear that *Holloway*'s mandate of automatic reversal applied only to situations where a defense counsel had objected to the multiple representation of co-defendants and the trial court did not conduct an inquiry concerning this potential conflict. *Mickens*, 535 U.S. at 168.

of Appeal assumed that an actual conflict of interest existed and reviewed what had occurred to determine whether Petitioner's representation was adversely affected. The approach adopted by the court of appeal, which led to its rejection of Petitioner's ineffective assistance of counsel argument, was not contrary to clearly established federal law.

Nor was the state court's decision an unreasonable application of federal law to the facts of the case. As noted, the state court of appeal assumed there had been a conflict of interest and denied relief because it concluded that the representation of Petitioner had not been adversely affected. Petitioner raises two arguments to demonstrate that his attorney's performance was adversely affected.

[3] First, Petitioner maintains that his attorney improperly waived a hearing on the admissibility of the DNA evidence because, as of the date of the trial, the California appellate courts had not stated in a published opinion that the method of DNA testing used, known as PCR, was admissible. The record indicates, however, that at trial, the prosecution requested that the court take judicial notice of the numerous times that PCR blood tests had been previously deemed admissible in the Santa Clara County Superior Court. Furthermore, after Petitioner's trial, the California appellate courts concluded that PCR blood testing is generally accepted as a reliable technique by the relevant scientific community. *See People v. Morganti*, 50 Cal. Rptr. 2d 837, 855 (Cal. Ct. App. 1996). Thus, as the state court of appeal determined, the record provides no basis to conclude that a challenge to the admissibility of the DNA evidence would have been successful. *See Lowry v. Lewis*, 21 F.3d 344, 346 (9th Cir. 1994) (concluding that an attorney's failure to file a motion was not ineffective assistance of counsel and noting that the attorney's decision not to file the motion was "vindicated by the results in related cases" where the motions were made, but they failed).

**[4]** Second, Petitioner argues that McCann provided ineffective assistance by failing to present evidence of other burglaries which occurred in the area but as to which Petitioner had not been charged. In concluding that this claim did not demonstrate that Petitioner's representation was adversely affected, the state court correctly recognized that the fact that other crimes had occurred in the area did not exonerate Petitioner. In addition, McCann's decision not to present this evidence was reasonable because the jury could have inferred from this information that Petitioner had committed other crimes in addition to the ones that were charged. Thus, it was not an unreasonable application of federal law for the state court to conclude that Petitioner had not established that he was adversely affected by the alleged conflict of interest from which his attorney suffered.

## B.   Due Process

**[5]** Next, we consider Petitioner's claim that his due process rights were violated because he was excluded from the in-chambers conference where the trial court concluded that his attorney did not have a conflict of interest. A defendant has a right to be present at any critical stage of his criminal proceedings if his presence would contribute to the fairness of the procedure. *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987); *United States v. Gagnon*, 470 U.S. 522, 527 (1985) (per curiam) (concluding that the defendants' absence did not violate the Due Process Clause where their presence was not needed to "ensure fundamental fairness" and they could not have added to or gained from being present at the conference). We need not decide whether it was error to exclude Petitioner from the conference in question here, though, because even if the exclusion was error, it does not require reversal.

**[6]** The Supreme Court has "adopted the general rule that a constitutional error does not automatically require reversal of a conviction . . . and has recognized that most constitu-

tional errors can be harmless." *Arizona v. Fulminante*, 499 U.S. 279, 306 (1991). Automatic reversal due to a constitutional error is required only if this error was a "structural defect" that permeated "[t]he entire conduct of the trial from the beginning to end" or "affect[ed] the framework within which the trial proceeds." *Id.* at 309-10. If the error was simply a "trial error," on the other hand, a court conducts a harmless-error review. A trial error "occur[s] during the presentation of the case to the jury, and . . . may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt." *Id.* at 307-08.

[7] The list of structural errors that the Supreme Court has recognized is short and limited. These structural errors include: "total deprivation of the right to counsel at trial," *see Gideon v. Wainwright*, 372 U.S. 335 (1963); "a judge who was not impartial," *see Tumey v. Ohio*, 273 U.S. 510 (1927); "unlawful exclusion of members of the defendant's race from a grand jury," *see Vasquez v. Hillery*, 474 U.S. 254 (1986); "the right to self-representation at trial," *see McKaskle v. Wiggins*, 465 U.S. 168 (1984); and "the right to [a] public trial," *see Waller v. Georgia*, 467 U.S. 39 (1984). *Fulminante*, 499 U.S. at 309-10. Since *Fulminante*, the Court has also recognized that "[d]enial of the right to a jury verdict of guilt beyond a reasonable doubt," is structural error. *See Sullivan v. Louisiana*, 508 U.S. 275, 281 (1993).

[8] The Supreme Court has never held that the exclusion of a defendant from a critical stage of his criminal proceedings constitutes a structural error. To the contrary, in *Rushen v. Spain*, 464 U.S. 114, 117 (1983) (per curiam), the Court determined that the fact that the defendant was denied the right to be present during an *ex parte* communication between the judge and a juror was a trial error that was subject to harmless error analysis. The court explained that the right to be present during all critical stages of the proceedings and the right to be represented by counsel, "as with most constitu-

tional rights, are subject to harmless error analysis unless the deprivation, by its very nature, cannot be harmless." *Id.* at 117 n.2 (citations omitted).

[9] The Court's decision in *Rushen* supports our conclusion that any error resulting from Petitioner's exclusion from the in-chambers meeting was not a structural error but was, instead, trial error subject to harmless error review. As already discussed, Petitioner has not demonstrated that he was adversely affected by his attorney's alleged conflict of interest. He does not allege any other adverse effect from his exclusion from the in-chambers conference, beyond the claims already discussed.[3] The determination of the California

---

[3]The dissent advances the argument that because Petitioner was excluded from the in-chambers meeting and was thus unaware of his attorney's potential conflict of interest, he was deprived "of his constitutional right to seek other counsel of his choice — an error that is per se prejudicial, structural, and which requires automatic reversal." *Post* at 5460. Cloaking the error in terms of the Sixth Amendment right to counsel, however, does not automatically identify a structural error requiring automatic reversal. As noted above, the Supreme Court explicitly held in *Mickens*, 535 U.S. at 174, that even if a defendant's Sixth Amendment rights were violated due to his attorney's conflict of interest, the defendant is not entitled to relief unless he can demonstrate that his attorney's performance was "adversely affected" by the conflict of interest. *See Belmontes v. Woodford*, 350 F.3d 861, 883 n.4, 885 (9th Cir. 2003) ("To establish a Sixth Amendment violation based on conflict of interest, the defendant must show that an actual conflict of interest adversely affected his lawyer's performance.")

It is apparent that Petitioner was not denied the right to seek counsel of his choice: McCann was an attorney retained by him, and he made no request that she be replaced or that another attorney be permitted to substitute for her. This case is simply not like the cases cited by the dissent to support its assertion of per se prejudice. That Petitioner was not fully informed of McCann's potential conflict of interest does not mean that he was denied the right to choose a lawyer. The characterization which the dissent seeks to attach here could be offered any time a defendant's attorney had an undisclosed conflict of interest. When a conflict of interest is not fully disclosed, it is inherent that the defendant might have elected to change counsel if he had known of the conflict. Yet *Mickens* and *Belmontes* clearly require that to obtain relief a defendant must demonstrate an adverse impact. Petitioner has failed to satisfy that requirement.

Court of Appeal that any error was harmless — that is, that Petitioner's representation was not adversely affected and that he was not denied a fair and impartial trial — was not an unreasonable application of federal law as applied to the facts of this case. *See Mitchell v. Esparza*, 540 U.S. 12, 16 (2003) (per curiam) (explaining that a state court is not required to cite or demonstrate an awareness of Supreme Court cases as long as its reasoning and result do not contradict them).

## III. CONCLUSION

**[10]** For the foregoing reasons, we conclude that the state court's determination that Petitioner did not receive ineffective assistance of counsel and that he was not prejudiced by his exclusion from the in-chambers meeting was not contrary to, or an unreasonable application of, clearly established federal law. Accordingly, we affirm the district court's denial of Petitioner's habeas petition.

**AFFIRMED.**

FERGUSON, Circuit Judge, with whom REINHARDT, Circuit Judge, joins, dissenting:

Prosecutors in the Ninth Circuit may now deliberately mislead judges about matters that are of vital importance to our judicial system. In affirming the denial of Campbell's habeas corpus petition, the majority ignores the factual record in this case, the prosecutor's and the defense counsel's deceptive maneuvering before trial, and Campbell's Sixth Amendment right to select counsel of his choice.

I.

On the first day of Campbell's trial, the state trial judge met in-chambers with Campbell's retained counsel, Maureen

McCann ("McCann"), and the Santa Clara County Deputy District Attorney Ralph Dixon ("Dixon"), who was prosecuting Campbell. Campbell was neither present at the in-chambers hearing nor was he informed of it.

The full extent of the in-chambers hearing went as follows:

THE COURT:     Mr. Dixon has something he wishes to put on the record with respect to Ms. McCann.

MR. DIXON:     Yes. Thank you, Your Honor. I informed the Court that Ms. McCann is currently facing charges that is [sic] being prosecuted by my office . . . A criminal defendant is entitled to legal representation free from any conflict of interest . . . I brought that to the Court's attention. I also stated that the district attorney's offer to counsel in her pending case is neither more lenient nor more severe than that any other defendant would be offered if they were eligible. In the case of counsel I believe diversion was the offer. Secondly, I've indicated for the record that she has not nor will she receive favorable treatment from our office for any reason.

THE COURT:     Do you wish to make any statement at this time, Ms. McCann?

MS. MCCANN:    No, that's fine.

THE COURT:     Very well.

MR. DIXON: And the court has determined that this is sufficient.

THE COURT: The Court has determined there is no conflict of interest with respect to Ms. McCann as against her relationship with the district attorney in this case of People v. Campbell.

MR. DIXON: Thank you, Your Honor.

THE COURT: Thank you.

In the span of less than a few minutes, Dixon (1) excluded Campbell from an in-chambers hearing that violated Campbell's constitutional rights, (2) deliberately withheld from the trial judge material facts pertaining to McCann's criminal history, and (3) colluded with McCann to deny Campbell the opportunity to consider retaining other counsel of his choice.

The record reveals several crucial facts concerning McCann's criminal history that Dixon knew about yet deliberately withheld from the trial judge during the in-chambers hearing. McCann had been arrested for carrying a bag of methamphetamine as she passed through a metal detector facility at the San Martin Criminal Court of Justice in violation of California Health and Safety Code § 11377(a). Upon being advised of her *Miranda* rights, she lied to the deputy sheriffs by telling them that she had found the bag on the floor. Her previous criminal record revealed that she had been convicted of driving under the influence, that she was on probation, that she violated her probation, and that there was an outstanding bench warrant in the amount of $15,000 against her. Moreover, an assistant Attorney General had told the district attorney's office that McCann was *ineligible* for diversion under California Penal Code § 1000(a)(4) because her

probation had been revoked;[1] that is, Dixon had erroneously offered McCann diversion.

Dixon had a duty to disclose to the trial judge during the in-chambers hearing all the facts that he knew concerning McCann.[2] The Supreme Court has emphasized "the special role played by the American prosecutor in the search for truth in criminal trials." *Strickler v. Greene*, 527 U.S. 263, 281 (1999). "A prosecutor has the responsibility of a minister of justice and not simply that of an advocate. This responsibility carries with it specific obligations to see that the defendant is accorded procedural justice . . . ." ABA Model Rules of Professional Conduct Rule 3.8 cmt. (2002); *accord* ABA Standards for Criminal Justice 3-1.1(b) (3d. 1993) ("The prosecutor is both an administrator of justice and an advocate. The prosecutor must exercise sound discretion in the performance of his or her functions."); *id.* at 3.1-1(c) ("The duty of the prosecutor is to seek justice, not merely to convict"); *see also Hayes v. Brown*, No. 99-99030, slip op. at 2764 (9th Cir. Mar. 7, 2005) ("The prosecuting attorney['s] . . . obligation is to govern impartially[,] . . . to do justice[,] . . . [and] . . . to

---

[1]On March 15, 1996, approximately three weeks after Campbell was convicted, McCann's preliminary hearing was held in Santa Clara County Municipal Court. At the hearing, the deputy district attorney informed the court that, although his office has originally offered McCann diversion, he was revoking the offer because McCann was "not eligible for diversion." McCann's counsel then explained that McCann had been on probation in San Diego for another offense, and that her probation had been revoked for "possibly failing to finish a drinking and driving program some six years ago."

[2]From the transcript, it is of course evident that some off-the-record conversation took place between Dixon, McCann, and the trial judge prior to placing the matter on the record. But this conversation simply could not have revealed all the facts concerning McCann's criminal history and current legal problems, which are central to the Fifth Amendment due process violation and Sixth Amendment violation of right to counsel of choice at issue in this case. To imply, as the majority does, that the trial judge somehow knew the whole truth concerning McCann and her ineligibility for diversion is to insult the state judge and state judiciary system.

assure that the defendant has a fair and impartial trial") (quoting *Commonwealth of The Northern Mariana Islands v. Mendiola*, 976 F.2d 475, 486 (9th Cir. 1992) (citations omitted), *overruled on other grounds by George v. Camacho*, 119 F.3d 1393 (9th Cir. 1997) (en banc)).

A prosecutor, like all attorneys, also owes a duty of candor toward a court. In particular, "[i]n an ex parte proceeding, a lawyer shall inform the tribunal of *all material facts known to the lawyer* which will enable the tribunal to make an informed decision, whether or not the facts are adverse." ABA Model Rules of Professional Conduct Rule 3.3(a)(4)(d) (2002) (emphasis added).

Dixon breached his duties as a prosecutor. He allowed the trial judge to assess McCann's responsibilities to her client without the whole truth being before the court. McCann was arraigned on the methamphetamine possession charge two days before Campbell's trial was scheduled to begin, so Dixon clearly knew of the outstanding charges against McCann. Dixon waited until the first day of trial, however, to "put [something] on the record." This was calculated and not coincidental. He knew that a further delay in proceedings would less likely be granted by the trial judge on the day of the trial when all parties and witnesses were already present in the courtroom.

Lady Justice may be blind, but she does not wear earplugs. Every judge in the United States, if informed of the true and complete facts, would have inquired into the outstanding charges against McCann, probed Dixon further as to McCann's eligibility for diversion, and, more importantly, called Campbell into the chambers to discuss his counsel's misconduct and to determine whether Campbell wished to be represented by other counsel at his trial. Dixon's and McCann's deceptive maneuvering prevented both the trial judge from holding an honest and fair hearing and Campbell

from becoming informed about his counsel's criminal history and current legal problems.

## II.

The majority does not deny that a due process violation occurred when Campbell was excluded from the in-chambers hearing, but contends that this violation was mere "trial error" subject to harmless error review not rising to the level of "structural error" as defined by the Supreme Court.[3] The majority fails to recognize that the actual and obvious *effect* of the due process violation was to deliberately deprive Campbell of his constitutional right to seek other counsel of his choice — an error that is per se prejudicial, structural, and which requires automatic reversal.

The Supreme Court has long recognized that the Sixth Amendment protects a criminal defendant's choice of counsel.[4]

---

[3]In *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987), the Supreme Court held that "a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." If a defendant is denied his constitutional right to be present during a critical stage of criminal proceedings, Supreme Court precedent requires us to evaluate the nature of the error. Reversal is automatic if the defendant's absence constitutes a "structural error," that is, an error that permeates "[t]he entire conduct of the trial from beginning to end[,]" or "affect[s] the framework within which the trial proceeds . . . ." *Arizona v. Fulminante*, 499 U.S. 279, 309-10 (1991). Trial errors, on the other hand, are generally errors "[that] occurred during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented . . . ." *Id.* at 307-08. Trial errors, unlike structural errors, are subject to harmless error analysis.

[4]All circuits recognize the constitutional right to select counsel of choice. *See United States v. Burton*, 584 F.2d 485, 489 (D.C. Cir. 1978); *United States v. Neal*, 36 F.3d 1190, 1205-06 (1st Cir. 1994); *Lainfiesta v. Artuz*, 253 F.3d 151, 154 (2d Cir. 2001); *United States v. Carey*, 409 F.2d 1210, 1213-14 (3d Cir. 1969); *United States v. Inman*, 483 F.2d 738, 739-40 (4th Cir. 1973); *Gandy v. Alabama*, 569 F.2d 1318, 1320 (5th Cir.

In *Powell v. Alabama*, 287 U.S. 45, 53 (1932), the Supreme Court noted: "[I]t is hardly necessary to say that the right to counsel being conceded, a defendant should be afforded a fair opportunity to secure counsel of his own choice." *See also Chandler v. Fretag*, 348 U.S. 3, 10 (1954) ("[A] defendant must be given a reasonable opportunity to employ and consult with counsel; otherwise, the right to be heard by counsel would be of little worth"); *Glasser v. United States*, 315 U.S. 60, 75 (1942) ("Glasser wished the benefit of the undivided assistance of counsel of his own choice. We think that such a desire on the part of an accused should be respected"). Moreover, in *Wheat v. United States*, 486 U.S. 153, 159 (1988), the Supreme Court acknowledged that the Sixth Amendment's guarantee of assistance of counsel comprehends the right to select counsel of one's choice.[5] *See also Morris v. Slappy*, 461 U.S. 1, 21-23 (1983) (Brennan, J., concurring) (discussing cases that protect a defendant's right to choose his own counsel).

The deprivation of the right to select counsel of one's choice is per se prejudicial. "Obtaining reversal for violation of [the] right [to select counsel of one's choice] does not require a showing of prejudice to the defense, since the right reflects constitutional protection of the defendant's free choice independent of concern for the objective fairness of the proceeding." *Flanagan v. United States*, 465 U.S. 259, 267-68

---

1978) (per curiam); *Linton v. Perini*, 656 F.2d 207, 209 (6th Cir. 1981); *United States v. Carrera*, 259 F.3d 818, 824-25 (7th Cir. 2001); *United States v. Lewis*, 759 F.2d 1316, 1326 (8th Cir. 1985); *Releford v. United States*, 288 F.2d 298, 301 (9th Cir. 1961); *United States v. Nichols*, 841 F.2d 1485, 1501-02 (10th Cir. 1988); *In re BellSouth Corp.*, 334 F.3d 941, 955-56 (11th Cir. 2003).

[5]The right to choice of counsel applies only to persons who can afford to retain counsel. *See Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989). The record clearly indicates that Campbell retained McCann as counsel.

(1984).[6] Moreover, *Powell* makes clear that a defendant has a right to "a *fair opportunity* to secure counsel of his own choice." 287 U.S. at 53 (emphasis added).

Campbell was not just denied the fair opportunity to secure other counsel of his choice by virtue of his exclusion from the hearing, he was denied the fair opportunity to obtain the very facts that would enable him to secure other counsel of his choice. Excluded entirely from the in-chambers hearing, Campbell did not know of either the pending criminal charges

---

[6]The majority makes two errors in its rebuttal to our dissent in footnote 3. First, it erroneously believes that the sole harm that Campbell could have suffered in this case was a Sixth Amendment violation based on a conflict of interest, which requires a showing of adverse effect by McCann's performance. Under *Flanagan*, however, the deprivation of one's right to select counsel of choice is prejudicial per se. 465 U.S. at 267-68. Campbell was deprived of his right to select counsel of his choice as a direct consequence of being excluded from the in-chambers hearing, which is a Fifth Amendment due process violation separate and distinct from a Sixth Amendment violation based on a conflict of interest. The majority states that our analysis would apply "anytime a defendant's attorney had a conflict of interest." Obviously, it misses the point. Our analysis applies when the *state* violates the defendant's constitutional rights by depriving him of material information essential to the exercise of his Sixth Amendment rights, as it did here by engaging in a willful due process violation. The majority appears to see no problem with the State interfering with a defendant's right to select counsel of his choice even though the Supreme Court has made it clear that the client alone can exercise it. *See Faretta v. California*, 422 U.S. 806, 834 (1975) ("It is the defendant . . . who must be free . . . to decide whether in his particular case counsel is to his advantage. Personal liberties are not rooted in the law of averages. The right to defend is personal. The defendant, and not his lawyer or the State, will bear the personal consequences of a conviction").

Second, the majority misleadingly asserts: "McCann was an attorney retained by [Campbell,] and [Campbell] made no request that she be replaced or that another attorney be permitted to substitute for her." Campbell did not make such a request because neither Dixon nor McCann revealed the complete facts concerning McCann's criminal history and current legal problems. How could Campbell have made a request to retain substitute counsel without knowing such vital information about his current counsel?

against McCann or the fact that the same district attorney's office was prosecuting both him and McCann. If Campbell had been present at the hearing and had been told what the record stated about McCann's criminal history, he would have had the opportunity to consider choosing different counsel.[7] The fact that the trial judge did not expressly deprive Campbell of his right to secure counsel of his choice is of no consequence since Campbell's exclusion from the in-chambers hearing effectively amounted to an unconstitutional deprivation.[8] In this case, the deprivation was particularly harmful because, had Campbell been informed of the relevant facts, he, like any reasonable defendant, would undoubtedly have chosen a more stable and reliable counsel who would not hide her criminal history and legal problems from him.

Paying heed to the Supreme Court's recognition and protection of the constitutional right to select counsel of one's choice, this Circuit has consistently held that a deprivation of this right is per se prejudicial. *See Releford*, 288 F.2d at 301; *United States v. Ray*, 731 F.2d 1361, 1365 (9th Cir. 1984); *United States v. Washington*, 797 F.2d 1461, 1465 (9th Cir. 1986); *Bland v. Cal. Dep't of Corrs.*, 20 F.3d 1469, 1478 (9th Cir. 1994), *overruled on other grounds*, *Schell v. Witez*, 218 F.3d 1017, 1025 (9th Cir. 2000) (en banc); *Schell*, 218 F.3d at 1026. Other circuits have also held that denial of the right to select counsel of one's choice may never be deemed harmless. *See United States v. Panzardi Alvarez*, 816 F.2d 813, 818 (1st Cir. 1987) ("The right to choose one's counsel is an end in itself; its deprivation cannot be [deemed] harmless"); *United States v. Voigt*, 89 F.3d 1050, 1074 (3d Cir. 1996)

---

[7]"An unwanted counsel 'represents' the defendant only through a tenuous and unacceptable legal fiction. Unless the accused has acquiesced in such representation, the defense presented is not the defense guaranteed him by the Constitution, for, in a very real sense, it is not *his* defense." *Faretta*, 422 U.S. at 821.

[8]Nor can it be said that Dixon or McCann were constitutionally permitted to determine for Campbell whether to retain other counsel. *See id.*, 422 U.S. at 834.

("[A]rbitrary denials of the right to counsel of choice mandate per se reversal"); *Wilson v. Mintzes*, 761 F.2d 275, 281 (6th Cir. 1985) ("Evidence of unreasonable or arbitrary interference with an accused's right to counsel of his choice ordinarily mandates reversal without a showing of prejudice").

The California Court of Appeal's decision denying Campbell relief, therefore, was contrary to and an unreasonable application of Supreme Court precedent as demonstrated by Circuit law.[9] *See* 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 413 (O'Connor, J. concurring) (explaining that the state court decision "was both contrary to and involved an unreasonable application of this Court's clearly established precedent").

## III.

This case is astonishing. The prosecutor deliberately prevented the trial judge from determining defense counsel's true criminal history and current legal problems. This in turn prevented the trial judge from probing into whether the prosecutor and defense counsel were being honest with the court. It also prevented Campbell from obtaining basic information that would have enabled him to make an informed decision about whether to allow McCann to continue to represent him at his trial or seek new, unbiased defense counsel. Excluded

---

[9]Although a state court decision may not be overturned on habeas review merely because the decision conflicts with decisions of any court other than the United States Supreme Court, other authorities may be persuasive for purposes of determining whether a particular state court decision is "contrary to" Supreme Court law. *Duhaime v. Ducharme*, 200 F.3d 597, 600 (9th Cir. 2000); *see also Ouber v. Guarino*, 293 F.3d 19, 26 (1st Cir. 2002) (references to lower court decisions "may be especially helpful when the governing Supreme Court precedent articulates a broad principle that applies to a wide variety of factual patterns"). Here, Circuit law demonstrates the broad principle articulated by the Supreme Court in *Flanagan* concerning the per se prejudicial effect of the denial of the right to select counsel of one's choice.

from the in-chambers hearing, Campbell was unconstitutionally deprived of due process and as a result unconstitutionally denied his liberty and right to select other counsel of his choice. The error was per se prejudicial and structural as defined by the Supreme Court and four Circuits. Campbell's habeas petition should therefore be granted. Accordingly, I respectfully dissent.