**Thomas Stinko MARKS, a/k/a Thomas Stanco Marks, Petitioner–Appellant,**

v.

**Rob McKENNA, Washington State Attorney General; et al., Respondents–Appellees.**

No. 07–35998.

United States Court of Appeals, Ninth Circuit.

Submitted Jan. 23, 2009.*

Filed Feb. 6, 2009.

---

\* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

Tracy Staab, Esquire, Federal Public Defender's Office, Spokane, WA, for Petitioner–Appellant.

Paul Douglas Weisser, Esquire, Attorney General of Washington, Olympia, WA, for Respondents–Appellees.

Before: BEEZER, TALLMAN and M. SMITH, Circuit Judges.

## MEMORANDUM **

Petitioner–Appellant Thomas Marks appeals the denial of his petition for a writ of habeas corpus. As the facts and procedural history are familiar to the parties, we do not recite them here except as necessary to explain our disposition.

Petitions for habeas corpus relief such as this one are governed by the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254(d). *Lindh v. Murphy,* 521 U.S. 320, 322, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). Under AEDPA, we may not grant habeas relief unless the last reasoned state court adjudication, here that of the Washington Court of Appeals, "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). We review a district court's denial of a habeas petition de novo. *Campbell v. Rice,* 408 F.3d 1166, 1169 (9th Cir.2005) (en banc).

Petitioner claims that his attorney's joint representation during a pre-trial hearing created an actual conflict of interest, thereby denying him his Sixth Amendment right to counsel. The state court in this case determined that no actual conflict of interest existed.[1] Therefore, Petitioner must show that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law" or was "based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d). To make that showing, Peti-

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

1. The state court found no actual conflict because (1) "[d]efense counsel did not actively represent Steve Marks's interests"; (2) there was no "evidence that Mr. Marks's and Steve Marks's interests were adverse"; and (3) "the testimony of both defendants at trial was consistent."

tioner must first show that his trial counsel labored under an actual conflict, that is, he "actively represented conflicting interests," *Cuyler v. Sullivan,* 446 U.S. 335, 350, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), and that the conflict "actually affected the adequacy of his representation." *Id.* at 349, 100 S.Ct. 1708.

We assume, *arguendo,* that Petitioner satisfies the first prong, that during the pre-trial conference, Petitioner's trial counsel "actively represented conflicting interests," however minimal that conflict was. *See id.* at 350, 100 S.Ct. 1708. The second prong poses the more difficult question: whether the conflicting interests affected the representation of Petitioner's counsel. To answer this question, we ask whether his counsel—had he not been representing Steve Marks at the time of Petitioner's pretrial conference—would have employed a "plausible alternative defense strategy or tactic," *Hovey v. Ayers,* 458 F.3d 892, 908 (9th Cir.2006), that "possessed sufficient substance to be a viable alternative." *United States v. Rodrigues,* 347 F.3d 818, 823 (9th Cir.2003). Petitioner argues that such a "plausible alternative defense strategy or tactic" exists, namely, that counsel would have attempted to impeach co-defendant Steve Marks on his testimony that he heard Petitioner say the word "[motherf* * *er]."

The only conceivable reason for counsel to have impeached Steve Marks under this circumstance would have been to put that testimony in the record for further impeachment at trial. *See* Wash. R. Evid. 607, 613 (discussing impeaching witnesses with prior inconsistent statements); *State v. Huynh,* 107 Wash.App. 68, 26 P.3d 290, 293 (2001). However, such an attempted impeachment would have served little pur-

pose; it would not have "possessed sufficient substance to be a viable alternative." *Rodrigues,* 347 F.3d at 823.

First, Petitioner himself gave contradictory testimony on the statement in question. He first agreed that he had said "come on, [motherf* * *er]," but then on cross-examination, denied that he had said [motherf* * *er] at all. Steve Marks first testified that he heard Petitioner say "come on, [motherf* * *er]." But on cross-examination, Steve Marks insisted that he never said he heard Petitioner say "come on," but that he still might have heard him say "[motherf* * *er]." Therefore, because Petitioner himself had already agreed earlier in his testimony that he *had* said "[motherf* * *er]," a witness' testimony to the contrary would have done little to mitigate this admission.

Moreover, even if Petitioner's counsel had attempted to adduce testimony from Steve Marks at trial that Petitioner never said "[motherf* * *er]," the prosecution certainly would have impeached Steve Marks with his own earlier testimony that Petitioner *had* said "[motherf* * *er]." *See* Wash. R. Evid. 613. Therefore, an attempted impeachment of Steve Marks at that stage also would have been largely ineffective, and even a fully competent, non-conflicted attorney would not have pursued that tactic.

Thus, Petitioner has not shown any "plausible alternative defense strategy or tactic [that] might have been pursued but was not" because of Petitioner's counsel's conflict. *See Hovey,* 458 F.3d at 908. As a result, Petitioner cannot show that any conflict "actually affected the adequacy of his [counsel's] representation," *Cuyler,* 446 U.S. at 349, 100 S.Ct. 1708, so Petitioner cannot show an actual conflict of interest.[2]

**2.** In reaching this conclusion, we have not considered whether Petitioner was preju-

Although the state court's rationale for finding no actual conflict was different from that articulated above, its conclusion was the same. The state court thus did not arrive at a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law" or "based on an unreasonable determination of the facts in light of the evidence presented." *See* 28 U.S.C. § 2254(d).

**DENIED.**

---

diced, a prohibited inquiry under *Cuyler. See* 446 U.S. at 349–50, 100 S.Ct. 1708.

