**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| WILLIAM GREGORY MORDICK, | No.  17-56373 |
| Petitioner-Appellant, | D.C. No. CV 13-01439 DDP |
| v. | |
| ELVIN VALENZUELA, Warden, | MEMORANDUM* |
| Respondent-Appellee. | |

Appeal from the United States District Court
for the Central District of California
Dean D. Pregerson, District Judge, Presiding

Argued and Submitted December 3, 2018
Pasadena, California

Before:     TASHIMA and IKUTA, Circuit Judges, and KENNELLY,** District
Judge.

William Gregory Mordick ("Mordick") appeals the district court's order

denying his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  We

have jurisdiction under 28 U.S.C. §§ 1291 and 2253.  We review de novo the

---

\*       This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\*       The Honorable Matthew F. Kennelly, United States District Judge for
the Northern District of Illinois, sitting by designation.

district court's denial of a petition for a writ of habeas corpus, *see Campbell v. Rice*, 408 F.3d 1166, 1169 (9th Cir. 2005) (en banc), and we grant the petition.

In 2010, Mordick was convicted in California of first-degree murder for the 1983 death of his estranged wife, Katherine Mordick ("Katherine"), and sentenced to twenty-five years to life in prison. The California Court of Appeal affirmed the conviction in a reasoned opinion, and the California Supreme Court summarily denied Mordick's petition for review. Mordick petitioned for a writ of habeas corpus, which the district court denied.

"When the state court addresses a claim on the merits, this court may not grant a habeas petition unless the state court's decision 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Christian v. Frank*, 595 F.3d 1076, 1080 (9th Cir. 2010) (quoting 28 U.S.C. § 2254(d)). Unaddressed claims, however, are reviewed de novo. *Johnson v. Williams*, 568 U.S. 289, 293 (2013). Here, because the California Supreme Court denied Mordick's petition without comment, we review the California Court of Appeal's opinion, *People v. Mordick*, No. G044742, 2013 WL 424769 (Cal. Ct. App. Feb. 4, 2013).

**1.**     The district court did not err in holding that Mordick is not entitled to habeas relief on his insufficient evidence claim.  To make out a successful insufficient evidence claim under *Jackson v. Virginia*, 443 U.S. 307 (1979), on habeas review, Mordick must overcome two layers of deference:  deference to the jury's decision under *Jackson*, and, because the California Court of Appeal addressed Mordick's sufficiency of the evidence claim on the merits, to the state court's decision under AEDPA.  *Kyzar v. Ryan*, 780 F.3d 940, 948 (9th Cir. 2015).

Under this exceedingly deferential standard of review, we cannot say that the California Court of Appeal's holding that Mordick did not demonstrate that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt," *Jackson*, 443 U.S. at 324, was an unreasonable application of federal law.  28 U.S.C. § 2254(d).  Mordick's argument that the established time of death precludes his having committed the murder is unpersuasive and not supported by the record: the deputy coroner testified that Katherine could have been killed at 10 a.m. (within the prosecution's proposed window for Mordick's killing Katherine), and the physician who conducted Katherine's autopsy estimated the time of death as 36-48 hours prior to the autopsy—which would include 10 a.m. to noon as a possible window for time of death.  Therefore, it was reasonable for the jury to

conclude that Katherine was killed as early as 10 a.m., placing her death in the window of time in which Mordick admitted to being at the house.

Similarly, Mordick's argument that the DNA and blood evidence admitted at trial were either insufficient or exculpatory does not meet the *Jackson* standard. Mordick argues that blood and DNA matching his found near the crime scene could have been deposited at any time; that there is no evidence Mordick bled at the scene of the crime on the day of Katherine's killing; and that the California Court of Appeal failed to consider possible "exculpating evidence," including unknown male DNA and animal hair found at the crime scene. But even where "some pieces of testimony regarding . . . DNA evidence [are] called into question," if all of the evidence viewed in the light most favorable to the prosecution could reasonably support conviction beyond a reasonable doubt, the *Jackson* standard is not met. *McDaniel v. Brown*, 558 U.S. 120, 133, 134 (2010). Here, blood matching Mordick's profile was found at the scene of the crime, DNA matching Mordick's profile was found "mixed" with Katherine's DNA profile in several areas, and Mordick admitted to visiting Katherine within the established time-window of her death. Accordingly, it was "reasonable" for the jury to determine the blood and DNA samples supported guilt. *Coleman v. Johnson*, 566 U.S.650, 655 (2012).

4

Therefore, the California Court of Appeal did not unreasonably apply Supreme Court precedent when it upheld Mordick's conviction. Mordick is not entitled to habeas relief on his insufficient evidence claim.

**2.** We do conclude, however, that Mordick is entitled to habeas relief based on the trial court's limitation of Bonnie Pioch's testimony, in violation of Mordick's due process right to present a defense. *See Chambers v. Mississippi*, 410 U.S. 284, 302 (1973). Mordick argues that the trial court violated his due process rights by limiting the extent to which Pioch, Katherine's neighbor, could testify about a conversation Pioch and Katherine had held before Katherine's death. Pioch had previously testified before the grand jury and in the first trial that she had seen Katherine on Saturday, January 22, and that Katherine told her that Mordick had the children, the children would be back on Sunday, and Katherine would be using the weekend to pack and potentially attend a church retreat. The trial court excluded this statement on hearsay and reliability grounds.

Unlike Mordick's *Jackson* claim, the California Court of Appeal did not address Mordick's *Chambers* claim regarding Pioch's testimony, apparently considering only his state-law evidence claim. Because "the state court, in denying relief, made no reference to federal law," the presumption that this claim was

adjudicated on the merits is rebutted. *Johnson*, 568 U.S. at 301. Therefore, de novo review is appropriate. *Id.*

Under *Chambers*, the exclusion of hearsay statements that are critical to the defense and that bear "persuasive assurances of trustworthiness" may deny a defendant due process. 410 U.S. at 302. This is one such case. Pioch's statement was "critical to [Mordick's] defense," *id*., because it showed that Katherine was still alive on Saturday *after* Mordick came to the house to pick up his two daughters. Given that the state's case was predicated on Mordick's having killed Katherine when he saw her at 10 a.m. on Saturday while picking up his daughters, evidence that Katherine was still alive after the meeting would significantly undermine the government's theory of the case and was fundamental to Mordick's defense.

Further, Pioch's statement was sufficiently trustworthy. The trustworthiness of Pioch's statements is not directly dependent upon the freshness of her memory. Pioch was a neutral witness with no reason to fabricate. She was permitted to testify as to other conversations and interactions with Katherine, and was available for cross-examination. Any internal inconsistencies in her statements were likely due to the lengthy period of time between the murder and the trial, not because Pioch's statement was unreliable. Accordingly, given that Pioch's testimony was

6

critical to Mordick's defense and any uncertainty was explained by the passage of time, "under the facts and circumstances of this case the rulings of the trial court deprived [Mordick] of a fair trial." *Id*. at 303. We therefore hold that the district court erred in denying Mordick habeas relief based on the trial court's exclusion of Pioch's testimony.

**3.** The state trial court's exclusion of the statements of E, Mordick's minor daughter, also deprived Mordick of his due process right to present a defense, in contravention of *Chambers*, 410 U.S. at 302. Mordick is therefore entitled to habeas relief on this basis, also.[1]

E, who was four-years-old at the time, was at home with her mother, Katherine, on the morning of the latter's death. Shortly after Katherine's death, E told the police and her aunt that she had eaten breakfast right before her father, Mordick, picked her and her sister up. This statement was memorialized in the police report, which states that E said that Mordick picked them up "right after breakfast." Although E, at the time of trial, had no memory of having made the statement, the statement is partly corroborated by the fact that unwashed cereal bowls and spoons were found in the kitchen sink. Expert testimony also

_____

[1] As with Pioch's testimony, discussed in Part **2**, above, because the court of appeal did not address Mordick's constitutional challenge to the exclusion of E's statements, we review de novo. *See Johnson*, 568 U.S. at 301.

7

established that Katherine's "stomach was almost essentially empty" when she died, which means that she likely had last eaten at least two hours prior to her death.

This testimony is crucial to Mordick's defense that Katherine was still alive when he left Katherine's house with the two girls. And the fact that E was a child at the time does not render her such an unreliable narrator that her testimony could be excluded on that basis only. *Cf. Harris v. Thompson*, 698 F.3d 609, 634–36 (7th Cir. 2012) (finding that exclusion of a child witness's testimony critical to his mother's defense in a murder prosecution violated the Sixth Amendment). What one does after finishing a meal is a matter within the common knowledge of children, and the statement was recorded shortly after the event; thus, the reliability and trustworthiness of E's statement that she and her sister left "right after breakfast" seem assured. *Cf. People v. Sanchez*, 439 P.3d 772, 784 (Cal. 2019) (noting that a child is presumed competent to testify unless the party objecting to her testimony can demonstrate otherwise). Moreover, the statement doesn't involve any specific judgments about time, like "we left about 20 minutes after we finished eating," or "we left at 9:15."

Second, the fact that E could not remember making the statement years later is of no moment and not unusual—many adults (perhaps most of us) cannot

8

recall making statements, especially seemingly inconsequential ones, that we made days, weeks, or months before.  In fact, that is one reason why the law has long recognized a hearsay exception for a common category of statements labeled "past recollection recorded."  *See* Fed. R. Evid. 803(5); Advisory Committee Note to Paragraph (5) ("A hearsay exception for recorded recollection is generally recognized and has been described as having 'long been favored by the federal and practically all the state courts that have had occasion to decide the question.'" (citation omitted)).

Timing was at the heart of Mordick's defense that he was not physically near Katherine at the established time (or window of time) of Katherine's death.  Excluding E's statement deprived Mordick of his due process right to present a defense.

**4.**     Finally, Mordick argues that habeas relief is warranted because the cumulative effect of the court's decisions to exclude these statements violated his right to due process and a fair trial.  Because we conclude that Mordick's right to a fair trial was violated by the exclusion of Pioch's exculpatory testimony and E's statements, we need not reach this issue.

•   ●   •

For the reasons stated in Parts **2** and **3**, above, we reverse the denial of habeas relief and remand with instructions to issue the writ, unless the State of California grants Mordick a new trial within a reasonable period of time to be determined by the district court.

**REVERSED and REMANDED.**



*Mordick v. Valenzuela*, 17-56373
IKUTA, Circuit Judge, dissenting:

The record here provides no basis for Mordick's claims that his constitutional rights were violated by the exclusion of Pioch's grand jury testimony and the hearsay statement of his four-year-old daughter.

*Chambers v. Mississippi*, 410 U.S. 284 (1973), and its progeny, stand for the proposition that "a state court may not prohibit a defendant from presenting directly exculpatory evidence when the evidence is essential to the defendant's case and bears sufficient indicia of reliability." *Ayala v. Chappell*, 829 F.3d 1081, 1113 (9th Cir. 2016) (citing *Chambers*, 410 U.S. at 300–01). Here the excluded evidence bears no indicia of reliability and lacks probative value.

As to Pioch's grand jury testimony, while Pioch undoubtedly had a conversation with Katharine Mordick at some point before her death, that conversation is "essential" to Mordick's case only if it occurred on the Saturday that Katherine was murdered, after Mordick picked up his daughters and left.

But Pioch's testimony is as constant and reliable as a feather floating in the wind. In 2003, Pioch told the grand jury that she spoke to Katherine on a Saturday. But in response to the question, "are you confident as to when your last conversation with [Katherine] took place," Pioch testified, "it was either Friday, or Saturday," and later explained, "[w]ell, I recall talking to her, but I don't remember

if it was on the Friday night, or the Saturday."

At the 2009 trial, Pioch was adamant that her last conversation with Katherine took place on Friday night, the day before the murder. She explained her contrary grand jury testimony regarding a Saturday afternoon conversation as referring to the weekend before the murder. Pioch justified her inconsistent testimony on the ground that the prosecutor in the 2003 grand jury proceeding was "jumping" around in his questions and "flip-flopping from one weekend to the next."

In light of her uncertain and changing statements, Pioch's grand jury testimony about when she spoke with Katherine lacks any "persuasive assurances of trustworthiness." *Chambers*, 410 U.S. at 302.[1] Excluding this testimony certainly did not deprive Mordick of the "fairness and reliability in the ascertainment of guilt and innocence" promised by the Due Process Clause. *Id.*

Likewise, the exclusion of E.'s hearsay statement did not deprive Mordick of a fair trial. As an initial matter, "[w]hen a state court rejects a federal claim without expressly addressing that claim, [we] must presume that the federal claim was adjudicated on the merits." *Johnson v. Williams*, 568 U.S. 289, 301 (2013).

---

[1] Moreover, Mordick was permitted to impeach Pioch extensively with the hearsay statements, so as to argue that the conversation took place on the day of the murder.

2

Unless this "strong" presumption is rebutted, *id.*, we afford deference under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) to the California Court of Appeal's rejection of Mordick's claim that the exclusion of E.'s hearsay statement violated his constitutional rights, *see* 28 U.S.C. § 2254(d). Here, the presumption was not rebutted because the California Court of Appeal could have regarded this claim "as too insubstantial to merit discussion." *Johnson*, 568 U.S. at 299. Mordick did not mention E.'s hearsay statement, let alone the claim that the exclusion of E.'s hearsay statement deprived him of a fair trial, in his 61-page opening brief to that court. Rather, he failed to raise this issue until a single paragraph at the end of his 31-page reply brief. Because the state court's silent rejection of this claim was not an unreasonable application of *Chambers*, Mordick's claim fails.

Even under de novo review, the exclusion of E.'s hearsay statement did not deprive Mordick of a fair trial because the statement was neither reliable nor essential to his defense. *See Chambers*, 410 U.S. at 302–03. At trial, Mordick attempted to introduce evidence that shortly after the incident, his four-year-old daughter E. told her aunt that "daddy . . . got there right when we finished breakfast." At trial, E. herself had no memory of this statement, and there is no contemporaneous report of this statement in the record. Nor is there evidence

corroborating E.'s statement. *See LaGrand v. Stewart*, 133 F.3d 1253, 1267–68 (9th Cir. 1998). The majority's reliance on "the fact that unwashed cereal bowls and spoons were found in the kitchen sink," Maj. at 7, corroborates only that the family ate breakfast at some point, not the timing of Mordick's arrival. In place of persuasive assurances of reliability, we have the knowledge that testimony by children (particularly young children) is not very reliable, *see Idaho v. Wright*, 497 U.S. 805, 824 (1990); *see also Kennedy v. Louisiana*, 554 U.S. 407, 443–44 (2008), and as the district court concluded here, "[w]e don't even know what the daughter is talking about. Right after breakfast, is that minutes? Hours? Whatever. . . . If the four-year old said I knew how to tell time, I looked at the clock and it was X – but I don't know what time it was, it was right after breakfast."[2]

Nor is the statement critical to Mordick's defense. Mordick argues that the statement is exculpatory because the medical examiner testified that Katherine's "stomach was almost essentially empty," and so Katherine must have last eaten at least two to four hours prior to her death. Mordick reasons that if E.'s statement is

---

[2] The majority's reliance on an out-of-circuit decision, *Harris v. Thompson*, 698 F.3d 609, 612 (7th Cir. 2012), is misplaced, given that the child declarant in that case recalled his statement and the events it pertained to and was a witness to the actual death of the victim.

4

understood to mean that the family (including Katherine) ate breakfast within an hour or two before E. was picked up at 10 a.m., then Katherine could not have been killed until at least noon, and Mordick had an alibi for that time.  Obviously, this argument requires a series of unsupported inferences, including what a four-year-old means by "right after breakfast" and whether Katherine ate breakfast at the same time as her daughters.  Because the probative value of E.'s hearsay statement is limited, it cannot be deemed critical to Mordick's defense.

Because neither Pioch's grand jury testimony nor E.'s hearsay statement is reliable or critical to Mordick's defense, their exclusion did not deprive Mordick of a fair trial.  Accordingly, I dissent.