**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DUSTIN VADE MILLER,
             *Petitioner-Appellant,*

v.

SHARON BLACKETTER,
Superintendent, Eastern Oregon
Correctional Institution,
             *Respondent-Appellee.*

No. 06-36090

D.C. No.
CV-05-00267-PA

OPINION

Appeal from the United States District Court
for the District of Oregon
Owen M. Panner, Senior District Judge, Presiding

Argued and Submitted
December 4, 2007—Portland, Oregon

Filed May 12, 2008

Before: Diarmuid F. O'Scannlain, Susan P. Graber, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge O'Scannlain

## COUNSEL

Kristina Hellman, Assistant Federal Public Defender, Portland, Oregon, argued the cause for the petitioner-appellant and filed a brief; Patrick J. Ehlers, Assistant Federal Public Defender, Portland, Oregon, also filed a brief.

Carolyn Alexander, Assistant Attorney General, State of Oregon, Salem, Oregon, argued the cause for the respondent-

appellee and filed a brief; Mary H. Williams, Solicitor General, and Hardy Myers, Attorney General, State of Oregon, Salem, Oregon, were on the brief.

## OPINION

O'SCANNLAIN, Circuit Judge:

We are called upon to decide whether a defendant, whose attorney moved on the morning of trial to withdraw from the case and to postpone proceedings, was denied his right to the counsel of his choice when the trial judge denied the motions.

I

A

Thirty-four-year-old Dustin Vade Miller, unarmed but purporting to be holding a gun, robbed several small retail establishments over a ten-day period in 1998. He was apprehended by police, fought back, and later confessed to the crimes. Miller was charged in Lane County, Oregon, with several counts of robbery, assaulting a public safety officer, and resisting arrest. He pled not guilty to all counts and Janise Augur, of the Lane County Public Defender's Office, was appointed to represent him. Trial was scheduled, but was continued for thirty days upon Augur's motion because she had not yet received a tape of Miller's confession from the State. During this period, Augur and the State attempted to negotiate a plea agreement, but never agreed to the terms.

On the evening before trial, Miller left a telephone message on Augur's home answering machine stating that he was no longer comfortable with her representation and that he wanted a new lawyer. In response, Augur filed motions the next morning to withdraw as Miller's counsel and to postpone trial.

Oregon Circuit Judge Lyle C. Velure immediately held a proceeding in open court to consider the motions, with Miller present. Augur spoke first and explained that Miller's father ("Mr. Miller") had told his son the day before that he would be willing to pay for private representation. In addition, Augur described Miller's phone call and stated that he had become unwilling to communicate with her further about the case. Given these developments, she told the judge that she felt she could no longer effectively represent Miller. Finally, Augur speculated that a new attorney could be ready to try the case "within a month," but conceded that Miller had not yet retained a new attorney.

The prosecutor objected to postponement, arguing that the State was ready to proceed and that all of its witnesses were present at the courthouse that morning. Further, the prosecutor characterized Augur as competent and able counsel, noting that she had actively attempted to negotiate a plea on Miller's behalf and that she had recently filed a pretrial motion to suppress Miller's confession. The prosecutor also argued that the motions made that morning were simply Miller's attempt to delay trial and to pressure the State into a more favorable plea agreement than it had offered previously.

The trial judge then expressed his view that Augur was "one of the most competent criminal defense attorneys in the county" and also noted that one continuance had already been granted.[1] The judge then heard from Miller, who alleged that Augur had not met with him until two days before trial, leaving him "completely in the dark" regarding the status of his case. Miller went on to contend that Augur "had no defense prepared," specifically noting that she had not arranged for

---

[1] The parties dispute whether this initial continuance, due to the non-delivery of evidence, was caused by the State's negligence or Augur's, and the record is silent on this point. Still, because this was the trial judge's sole reference to the continuance, we do not view it as a material factor in his ruling on the motions.

any witnesses to testify on his behalf. In response to the trial judge's questions, however, Miller acknowledged that Augur had met with him on each of the two previous days and conceded that he never informed her of any witnesses who could testify on his behalf.

Judge Velure also allowed Miller's father to address the court. Mr. Miller explained his belated willingness to pay for private counsel by noting that his son had informed him of the potential length of his sentence only during a phone conversation the night before. Although Mr. Miller had previously decided to stay out of his son's legal troubles, he explained that he felt compelled to intervene once he learned of the "totally ridiculous, ridiculous" amount of prison time Miller was facing. Mr. Miller informed the court that he hoped to hire an attorney who could "talk candidly" and be "available to me," and that he had a particular attorney in mind, Fred Hartstrom, a friend from "many years back." When asked, Mr. Miller stated that he had not yet been able to reach Hartstrom, but that he had "made the call" that morning.

After his father spoke, Miller reiterated his complaints about Augur's preparation, and Augur reiterated her belief that Miller would not cooperate with her. The trial judge then took a ten-minute recess, during which he reviewed Augur's pretrial motion to suppress Miller's confession. Upon his return, the judge denied Augur's motions to withdraw and to continue trial, emphasizing his reluctance to encourage criminal defendants in filing last-minute motions to fire their lawyers. He also found Miller's allegations that Augur was unprepared unfounded, noting specifically that her pretrial motion was "appropriately prepared and appropriately formed." Nevertheless, in response to Miller's concerns, the trial judge decided to delay opening statements from the current date, a Friday, until the following Tuesday, giving Augur and Miller the intervening time to work together on his defense. In addition, the judge emphasized to Miller that he would be "extremely liberal" in construing procedural rules in

Miller's favor and that he would permit Augur to introduce any witnesses or evidence Miller revealed to her, even if Augur had not previously supplied such information to the prosecution.

Augur renewed her motion to withdraw, which was again denied. Next, Mr. Miller addressed the court, stating that while he had "no problem" with the ruling, which was "good enough and fair enough," he remained "really frightened" by the expected sentence. The trial judge assured Mr. Miller that he would ensure that his son would be "fairly and adequately represented" and emphasized that Miller needed to take advantage of the short delay the judge had provided to communicate with his attorney.

Later, in exchange for the State's promise to recommend a reduced sentence, Miller waived his right to a jury trial and agreed to a stipulated facts trial. The trial judge found Miller guilty on all counts and imposed a 210-month sentence, consistent with the State's recommendation.

B

Miller directly appealed his convictions to the Oregon Court of Appeals, which affirmed without opinion, and the Oregon Supreme Court denied review. Next, Miller filed for post conviction relief in Oregon state court, but the court denied the petition in its entirety. Again, the Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review.

On February 5, 2005, Miller filed a *pro se* petition for a writ of habeas corpus in the United States District Court for the District of Oregon. The district court construed all of Miller's claims as waived except his contention that the trial judge violated his Sixth Amendment rights by denying Augur's motions to withdraw and to postpone trial. The district court denied the petition, concluding that no clearly

established federal law provided that (1) the trial judge's decision was a denial of Miller's right to counsel of choice, or that (2) the trial judge's inquiry into the breakdown in Miller and Augur's relationship deprived him of the effective assistance of counsel. Miller timely filed this appeal, challenging only the first of the district court's determinations.)

## II

Miller's sole claim on appeal is that the state trial judge's denial of Augur's motions to withdraw and to postpone violated his right to the counsel of his choice. At the outset, we emphasize that because the question has not been preserved, we do not consider whether the deterioration in Miller and Augur's relationship prevented the effective assistance of counsel. Instead, our inquiry is limited to the narrower question of whether the trial judge's denial of Augur's motions deprived Miller of his right to choice of counsel.

## A

Miller's claim is governed by the Antiterrorism and Effective Death Penalty Act of 1996, which limits relief in cases such as this to situations in which the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *see Williams v. Taylor*, 529 U.S. 362, 407-09 (2000). Thus, to determine whether Miller is entitled to habeas relief, we first consider the Supreme Court precedent in existence at the time of the trial judge's decision that applies to Miller's claim. Second, we consider whether the trial judge's decision was contrary to or involved an unreasonable application of that precedent.[2] As the Supreme Court recently emphasized in *Carey*

---

[2]In reviewing a petition for habeas, we look to "the last reasoned state-court decision." *Van Lynn v. Farmon*, 347 F.3d 735, 738 (9th Cir. 2003). Because the Oregon appellate courts summarily affirmed Miller's convictions and summarily denied his petition for post-conviction relief, the trial judge's decision to deny the motions is the proper focus of our analysis.

*v. Musladin*, 127 S. Ct. 649 (2006), only the "holdings, as opposed to the dicta, of [the] Court's decisions" are relevant to this analysis. *Id.* at 653 (internal quotation marks omitted).

B

**[1]** The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This right "guarantees a defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds." *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624-25 (1989); *see also Powell v. Alabama*, 287 U.S. 45, 53 (1932) ("It is hardly necessary to say that the right to counsel being conceded, a defendant should be afforded a fair opportunity to secure counsel of his own choice."). In addition, a defendant who establishes that his right to counsel of choice was violated need not demonstrate prejudice in order to be entitled to relief, as a defendant claiming ineffective assistance of counsel is required to do. *United States v. Gonzalez-Lopez*, 126 S. Ct. 2557, 2562 (2006) (explaining that once the right to counsel of choice is violated, "[n]o additional showing of prejudice is required to make the violation 'complete.' ").

**[2]** The Supreme Court has emphasized, however, that the right to counsel of choice is "circumscribed in several important respects." *Wheat v. United States*, 486 U.S. 153, 159 (1988). Indeed, there are four specific situations in which the Sixth Amendment does not entitle a defendant to preferred counsel: A defendant does not have the right to be represented by (1) an attorney he cannot afford; (2) an attorney who is not willing to represent the defendant; (3) an attorney with a conflict of interest; or (4) an advocate (other than himself) who is not a member of the bar. *Id*. In addition, the Court has established that a trial court requires "wide latitude in balancing the right to counsel of choice against the needs of fairness,

and against the demands of its calendar." *Gonzalez-Lopez*, 126 S. Ct. at 2565-66 (citation omitted). As such, trial courts retain the discretion to "make scheduling and other decisions that effectively exclude a defendant's first choice of counsel." *Id.* at 2566.

With these principles set forth, we turn to the question of whether the trial judge's decision to deny Augur's motions to withdraw and to continue the trial date either contradicted or unreasonably applied their commands.[3]

## C

It is clear that the trial judge's decision was not contrary to clearly established Supreme Court precedent, as the Court has never considered a case involving facts sufficiently similar to those presented here to be controlling, nor did the trial judge apply a rule which contradicted the Court's instructions. *See Williams*, 529 U.S. at 405-06 (explaining that a state court's decision will be "contrary to" clearly established federal law where the state court "applies a rule that contradicts the governing law" set forth by the Supreme Court or where it "confronts a set of facts that are materially indistinguishable" from one of the Court's decisions and nevertheless arrives at a different result). Still, a state court may unreasonably apply clearly established federal law where it "either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407. Thus, we consider whether the trial judge's decision was an unreasonable exercise of its discre-

---

[3]We reject Miller's suggestion that the district court deemed his Sixth Amendment claim waived. While the district court noted that Miller "may have waived" his right to counsel of choice, it expressly stated that it would treat the claim as preserved and proceeded to assess the merits of Miller's petition at length in a reasoned decision. It is that decision which we review here.

tion to balance Miller's right to his chosen counsel against concerns of fairness and scheduling. *See Gonzalez-Lopez*, 126 S. Ct. at 2565-66. We identify three factors as particularly relevant to the trial court's decision.[4]

1

**[3]** First, at the time Augur moved to withdraw and to postpone trial, Miller had not yet retained another attorney to take her place. In *Gonzalez-Lopez*, the Supreme Court accepted the government's concession that a trial court wrongfully denied a defendant the right to counsel of choice where the court refused to grant *pro hac vice* admission to an attorney the defendant hired who was willing and prepared to begin representation immediately. 126 S. Ct. at 2560-61. Similarly, in *Bradley v. Henry*, 510 F.3d 1093 (9th Cir. 2007) (en banc) (plurality), we held that a state trial court violated a habeas petitioner's right to counsel of choice when it denied her motion to replace appointed counsel with retained counsel who "assured [the court] that he would be ready by the date appointed for trial." *Id.* at 1096; *see id.* at 1102 (Clifton, J., concurring in the judgment).

**[4]** In this case, however, Miller sought a thirty-day continuance during which he hoped to search for and to retain a new lawyer with the funds his father had belatedly offered to provide. At the time of the motions, no such attorney had been retained. While Miller's father had placed a call to Hartstrom, there was nothing to suggest that Hartstrom would be willing

---

[4]Both Miller and the State devote significant attention to the procedural adjustments the trial judge made in response to Miller's dissatisfaction with Augur, specifically his decisions to postpone opening statements from Friday to Tuesday, to allow Augur to introduce evidence not disclosed during discovery, and to be "exceedingly liberal" in construing procedural rules in Miller's favor. While such remedies are relevant to a claim of ineffective assistance of counsel, *Gonzalez-Lopez* instructs that they are irrelevant to a claim for denial of counsel of choice. *See* 126 S. Ct. at 2562.

or available to take Miller's case. Moreover, it was unclear how much time a new attorney, once hired, would have needed to prepare for Miller's trial. Although Augur speculated that preparation would take approximately one month, other commitments in the new attorney's schedule may have made such a timeline unrealistic.

2

**[5]** Second, the trial judge reasonably concluded that Augur was sufficiently prepared for trial. Under our precedents, the trial judge had a duty to inquire into the problems between Augur and Miller when they were first raised.[5] *Plumlee v. Masto*, 512 F.3d 1204, 1211 (9th Cir. 2008) (en banc) (citing *Schell v. Witek*, 218 F.3d 1017, 1025-26 (9th Cir. 2000) (en banc)). The judge conducted such an inquiry, affording both Miller and Augur an opportunity to explain the cause of Miller's dissatisfaction. Miller's sole contention was that Augur was unprepared for trial, having not met with him until two days before and having prepared no witnesses to testify. Yet upon the judge's questioning, Miller acknowledged that Augur had met with him on both of the two prior days and that he never furnished Augur with the names of any potential witnesses. In addition, while Augur expressed concerns about her ability to represent Miller in light of his refusal to cooperate, she never indicated that she was unprepared to try the case. Finally, the prosecution described Augur's active attempt to negotiate a plea agreement on Miller's behalf and the judge examined Augur's pretrial motion to exclude Miller's confession, finding it to be appropriately prepared.

_____

[5]Miller contends that the trial judge was required to conduct an *ex parte* hearing on the motions. We disagree. We have approved of such devices where a defendant alleges that his attorney has a conflict of interest. *See United States v. Nguyen*, 262 F.3d 998, 1004 (9th Cir. 2001); *United States v. Moore*, 159 F.3d 1154, 1160 (9th Cir. 1998). But in this case, Miller's only contention was that Augur was unprepared. Because the trial judge's inquiry and firsthand observation was sufficient to establish that Augur was prepared to begin trial, an *ex parte* hearing was not required.

In our view, this information provided the trial judge with reasonable grounds on which to conclude that Augur was prepared to try the case that morning, as scheduled. While we do not address the question of whether an irreconcilable conflict existed between Miller and Augur, *see supra* at 5280, we note that "we are not aware of any [Supreme Court precedent] that stands for the proposition that the Sixth Amendment is violated when a defendant is represented by a lawyer free of actual conflicts of interest, but with whom the defendant refuses to cooperate because of dislike or distrust." *Plumlee*, 512 F.3d at 1211.

3

**[6]** Third, we consider the timing of Augur's motions to withdraw and to postpone trial. Miller was indicted sixty-eight days before trial, and we are satisfied that such time provided him with ample opportunity to arrange for an alternative to court-appointed counsel by whatever means he saw fit, including by seeking his father's financial assistance. The fact that Mr. Miller's generosity was not prompted until the eve of trial in no way suggests that the court denied Miller a full and fair opportunity to seek the counsel of his choice. In any event, we reject Miller's suggestion that the Sixth Amendment entitled him to a fair opportunity to seek the counsel of his choice starting at the moment when his father offered to pay for private representation.

Moreover, we note that Miller's attorney did not move to withdraw and to continue the trial date until the morning trial was set to begin. The Supreme Court has held that "only [a trial court's] unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' " violates the Sixth Amendment, *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983) (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964)), and has emphasized the timing of the defendant's motion in analyzing such trial court decisions.

**[7]** In *Wheat*, the defendant moved to substitute his attorney only two court days before trial. 486 U.S. at 157. The Supreme Court held that the trial court did not abuse its discretion in denying the motion, concluding that "with the motion for substitution of counsel made so close to the time of trial," the trial court properly relied on "instinct and judgment" and did not exceed its "broad latitude." *Id.* at 163. Similarly, in *Morris*, the Court held that the trial court did not violate the defendant's Sixth Amendment rights in denying his motion for a continuance until the public defender initially assigned to his case was to be available. 461 U.S. at 12. In that case, the defendant's public defender was hospitalized and replaced by another public defender six days before trial. *Id.* at 5. The trial court found the new attorney was prepared and trial began on schedule. *Id.* at 6. The defendant did not move for a continuance until the first day of trial, and the Supreme Court held that the trial court was "abundantly justified" in denying the motion, noting the trial court could have reasonably construed the defendant's "belated request[ ]" as a "transparent ploy for delay." *Id.* at 13.

**[8]** Here, Miller did not express any dissatisfaction with Augur's representation until the day his father offered to pay for a private attorney, and the trial judge was not presented with the motions until the next morning, the morning trial was set to begin. Of course, the late timing of a motion to substitute counsel or to postpone trial does not always preclude relief. *See Daniels v. Woodford*, 428 F.3d 1181, 1200 (9th Cir. 2005) ("Even if the trial court becomes aware of a conflict on the eve of trial, a motion to substitute counsel is timely if the conflict is serious enough to justify the delay. This is particularly true where the trial court has reason to know of the conflict months before the trial but does not inquire into the conflict." (citation omitted)). However, in this case, with no justification for Miller's delay other than his father's change of heart, we cannot conclude that the trial judge's decision to deny the motions was the type of unreasoning and arbitrary

insistence on expeditiousness that clearly established federal law prohibits. *See Morris*, 461 U.S. at 11-12.

## III

**[9]** Viewing the foregoing factors under the deferential standard that § 2254(d)(1) requires, we conclude that the trial judge's decision to deny the motions to withdraw and to postpone trial did not exceed his discretion to balance Miller's right to counsel of choice against concerns of fairness and scheduling. *See Gonzalez-Lopez*, 126 S. Ct. at 2565-66.

Accordingly, the district court's denial of Miller's petition for a writ of habeas corpus is

**AFFIRMED.**