**NOT FOR PUBLICATION**

**FILED**

**UNITED STATES COURT OF APPEALS**

SEP 30 2024

**FOR THE NINTH CIRCUIT**

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 23-828 |
| Plaintiff - Appellee, | D.C. No. 3:20-cr-00022-IM-1 |
| v. | MEMORANDUM* |
| DUSTIN LEE HENDERSON, | |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the District of Oregon
Karin J. Immergut, District Judge, Presiding

Argued and Submitted August 22, 2024
Portland, Oregon

Before: WALLACH, CHRISTEN, and HURWITZ, Circuit Judges.**

Dustin Lee Henderson appeals his jury conviction for Interference with

Commerce by Threats or Violence, in violation of 18 U.S.C. § 1951; Possession of

a Firearm in Furtherance of a Crime of Violence, in violation of 18 U.S.C.

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Evan J. Wallach, United States Circuit Judge for the
Federal Circuit, sitting by designation.

§ 924(c)(1)(A); and Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1). Because the parties are familiar with the facts, we do not recount them here. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

1. The district court did not abuse its discretion in denying Henderson's three motions for substitute counsel. *See United States v. Mendez-Sanchez*, 563 F.3d 935, 942 (9th Cir. 2009) ("We review the denial of a motion for substitution of counsel for abuse of discretion."). The district court conducted an adequate inquiry into the cause of the communication breakdown between Henderson and his court-appointed attorneys, and afforded them "an opportunity to explain the cause of [Henderson's] dissatisfaction" at three separate hearings. *Miller v. Blacketter*, 525 F.3d 890, 896 (9th Cir. 2008). The information gathered at the hearings gave the court "a sufficient basis for reaching an informed decision." *United States v. Reyes-Bosque*, 596 F.3d 1017, 1033 (9th Cir. 2010) (citation and internal quotation marks omitted). The hearings revealed that the breakdown in communication was Henderson's voluntary choice. Henderson was not happy with the suppression motion his lawyer filed, disagreed with counsel's decision not to file other motions, thought the case was progressing too fast, and maintained that counsel did not have Henderson's "side of the story." He noted his family had hired a civil attorney who had instructed him to cease all contact with defense counsel. Henderson's justification for new counsel thus arose out of a "general

unreasonableness or manufactured discontent." *United States v. Smith*, 282 F.3d 758, 764 (9th Cir. 2002) (quoting *United States v. Walker*, 915 F.2d 480, 484 (9th Cir. 1990)). Because "the conflict was of [Henderson's] own making, [and] arose over decisions that are committed to the judgment of the attorney and not the client," Henderson "received what the Sixth Amendment required in the case of an indigent defendant[.]" *Schell v. Witek*, 218 F.3d 1017, 1026 (9th Cir. 2000). Given the court's decisions to grant alternate counsel earlier in the case, as well as the appointment of back-up counsel, Henderson was not effectively denied his right to representation.

2. Because Henderson based his motion for a new trial on the breakdown in the attorney-client relationship, we likewise conclude that the district court did not abuse its discretion in denying that motion. *See Williams v. Gaye*, 895 F.3d 1106, 1122 (9th Cir. 2018) ("We review the district court's denial of a motion for a new trial for abuse of discretion."). Even assuming that the motion was timely, we find that the district court properly concluded that the breakdown in the attorney-client relationship did not affect the fairness of Henderson's trial. The record also supports the district court's conclusion that Henderson knowingly waived his right to testify. When the district court informed Henderson that his attorney would ask him open-ended questions but could not elicit false or prohibited testimony, Henderson stated he understood and that it was "in [his] best interest" not to

testify.

3. The district court did not abuse its discretion by granting the government's motions in limine to exclude some evidence of the officers' use of force during Henderson's arrest. *United States v. Waters*, 627 F.3d 345, 351–52 (9th Cir. 2010) ("We review a district court's evidentiary rulings for an abuse of discretion and its interpretation of the Federal Rules of Evidence de novo."). The district court did not abuse its discretion in its Rule 401 and Rule 403 analysis because it avoided a "mini trial" by limiting the evidence of the force used during the arrest. Fed. R. Evid. 401, 403.

Reviewing the constitutional issue de novo, *Waters*, 627 F.3d at 352, we find that the limitations on Henderson's cross-examination of his arresting officers did not violate the Confrontation Clause because they did not "limit[] relevant testimony" or prejudice Henderson, and did not "den[y] the jury sufficient information to appraise the biases and motivations of the witness." *United States v. Bensimon*, 172 F.3d 1121, 1128 (9th Cir. 1999) (cleaned up). Although he was forced to present a diluted version of his particularly violent arrest, Henderson was ultimately able to present sufficient evidence to the jury of his theory that the police planted evidence in his home. In their testimony, officers admitted using force despite Henderson's calm demeanor, that it was possible Henderson could sue the officers for their use of force, that there was no evidence of a crime in plain

23-828

sight, and that they had "no idea if other officers moved things, touched things, or brought stuff into the home[.]" In his closing argument, Henderson was able to explain his theory of the case to the jury, emphasizing that the "officers [were] scared of a lawsuit" and obtained "evidence in a house that they ha[d] custody of for hours." "[T]he focus of the Confrontation Clause is on individual witnesses." *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986). "The jury would not have 'received a significantly different impression of [the officers'] credibility'" had Henderson been allowed to present evidence of the degree of force used during his arrest. *United States v. Alahmedalabdaloklah*, 94 F.4th 782, 826 (9th Cir. 2024) (quoting *Van Arsdall*, 475 U.S. at 680), *cert. pending*, No. 24-125.

**AFFIRMED.**